# EXHIBIT B



October 1, 2007

Jeff Fenton
Chairman of the Board
Global Motorsport Group, Inc.
16100 Jacqueline Court
Morgan Hill, CA 95037

Dear Mr. Fenton:

This letter will supersede a certain letter agreement dated May 24, 2007 concerning the engagement of TRG/CRG by Global Motorsport Group, Inc. ("the Company) and will memorialize CRG's ongoing engagement by the Company. For clarity purposes, effective July 1, 2007 TRG and Corporate Revitalization Partners merged and formed a new entity CRG Partners Group, LLC.

You shall, by executing this letter of agreement, engage CRG for the purposes of providing business advice and consultation to you regarding the Company's current challenges. We will also work with you toward the implementation of whatever strategies are most appropriate to achieve the Company's objectives. Our focus ("Scope") will include, but not be limited to, the following areas:

- Develop and implement various strategic alternatives as approved by the Company's Board of Directors.

- Assist management in the day-to-day operations of the business.

- Communicate and negotiate, if necessary with various stakeholders.

In addition to the foregoing, the Client is retaining Scott Avila of CRG to serve as the Client's Chief Restructuring Officer

All professional fees and expenses will be billed to you weekly and are payable weekly. CRG has previously received a $50,000 retainer (the "Retainer"). This Retainer will be held by CRG and applied to CRG's final bill for fees and expenses hereunder.

CRG will charge the appropriate rates or for the professionals assigned to this engagement. CRG shall invoice the Company at the rates outlined herein.

a) CRG shall provide the services of Scott Avila, Managing Partner, at an hourly rate of $450 per hour. Mr. Avila will be responsible for all aspects of CRG's engagement.

b) CRG will provide the services of Kevin Shea, Managing Director at the rate of $375 per hour; Bruce Erickson, Partner, at the rate of $405 and David Hsu, Consultant rate at the of $250 per hour.

Attached in an Appendix to this agreement are CRG's standard terms and conditions. By Client's execution of this agreement, Client acknowledges that it has read these and agrees to be bound by each of these terms and conditions, which are hereby incorporated by reference as if fully set forth herein.

If the foregoing accurately sets forth the understanding between us, please so indicate by signing and returning the enclosed copy of this letter to me. By virtue of my signature below, CRG is committed to providing its best efforts in the areas discussed above. The Company has the option to cancel this agreement at any time and for whatever reason upon written or oral notice to CRG. However, if this agreement is cancelled by the Company, CRG will be entitled to payment of its professional fees and expenses incurred through cancellation and the confidentiality and indemnity provisions of this agreement will survive cancellation.

I very much appreciate the opportunity to present this agreement to you and look forward to working with you on this assignment.

Very truly yours,

_____          Date: 1 October 2007
CRG Partners Group, LLC
By:    Michael Epstein
       Managing Partner


Agreed and accepted:


_____          Date: _____
**COMPANY**
By:

## Appendix

## General Terms and Conditions

1. **Retainer and Compensation.**

   (a) Client agrees that the Retainer amount is intended to be greater than the amount of fees and expenses due to or incurred by CRG under this Agreement at any given time. If the Client fails at any time or for any reason to pay any amounts due under this Agreement, then CRG may apply the Retainer to such unpaid amounts immediately and without prior notice to the Client. The Client hereby grants a first-priority security interest in the Retainer to CRG to secure payment to CRG of all amounts due under this Agreement. Client shall have a continuing obligation to replenish the Retainer or any increases to the Retainer to the required amount within three (3) days of any CRG request.

   (b) To the extent CRG is not actually working while traveling, CRG shall charge travel time for individuals at one-half of the applicable hourly rate. CRG adjusts its hourly rates for services periodically. Client agrees to pay such hourly rates as reasonably adjusted. The Company will be billed for all out-of-pocket expenses reasonably incurred by CRG in the performance of its obligations under this agreement. Such expenses shall include travel, meals and lodging, delivery services, etc. In addition, the Company will be billed an administrative fee of 4.5% of professional fees. This fee covers variable administrative expenses (e.g. telephone, computer services, copying, etc.). In states where CRG is obligated to collect sales taxes on professional services, such taxes will be invoiced to you.

2. **Access to Client Personnel and Information and Client Representation Concerning Information Provided to CRG.**

   (a) The Client will provide CRG with full access to all Client personnel, books, and records, including those of the Client's attorneys and other agents and third-party representatives. The Client also represents and warrants to CRG that, except as disclosed to CRG in writing, all information provided or made available to CRG by the Client, its directors, officers, employees, representatives, attorneys and agents at any time shall, to the best of the Client's knowledge: a) be complete and correct in all material respects; and b) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made. Client agrees that it shall notify CRG if it learns subsequently that any information provided or made available to CRG in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

   (b) The services to the Client under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Client acknowledges that numerous factors may affect the Client's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by CRG. The Client acknowledges that in rendering its services under this Agreement, CRG will be using and relying upon the information provided by Client, its directors, officers, employees, representatives and agents. Under any of the foregoing circumstances, the Client agrees that CRG shall have no duty to verify independently the reliability, accuracy or completeness of such information. The Client also agrees that CRG shall incur no liability to the Client or any individual or other entity that may arise if any such information proves to be unreliable, inaccurate or incomplete.

3. **Confidential Information.**

   (a) CRG shall not intentionally disclose the Client's "Confidential Information." Further, CRG will use the Confidential Information only for the purpose of providing services to the Client pursuant to this Agreement. "Confidential Information" means all confidential information relating to the Client, including without limitation information relating to the Client's assets, liabilities, business, or business plans and projections, that is: (i) disclosed to CRG by the Client, its directors, officers, employees, representatives, and agents; (ii) acquired by CRG from any inspection of the Client's property in connection with this Agreement; or (iii) produced by CRG, from Confidential Information of the type described in clauses (i) or (ii).

   (b) Confidential Information shall not include information that is: (i) now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of CRG, its employees, agents, or independent contractors; (ii) already known by CRG at the time of the disclosure, provided that such information did not come from a source known by CRG to be bound by a confidentiality agreement with the Client, or from a source that was otherwise prohibited from disclosing such information under a contractual, legal or fiduciary obligation; (iii) becomes available to CRG on a non-confidential basis from a source other than the Client, provided that, to CRG's knowledge, the source was not prohibited from disclosing such information to CRG under a contractual, legal or fiduciary obligation to the Client; (iv) independently developed by CRG, its employees, agents, or independent contractors primarily from information that is not Confidential Information; (v) information that the Client and CRG agree, orally or in writing, may be disclosed; (vi) information that is reasonably expected to be disclosed as part of CRG's Scope; or (vii) information that CRG reasonably believes, after consultation with its attorneys, it must disclose pursuant to applicable law, or regulatory or administrative process, including stock exchange rules.

   (c) CRG may make reasonable disclosures of Confidential Information: (i) to third parties in connection with the performance of its services under this Agreement so long as such disclosures are made pursuant to a confidentiality agreement in form and substance satisfactory to the Client; or (ii) in connection with any dispute between CRG and Client under or concerning this Agreement. If CRG receives any request by order, subpoena, or other legal process to produce any Confidential Information, then unless otherwise prohibited by law or process, CRG will use its best efforts to provide the Client with timely notice of such request. At the Client's request and expense, and unless otherwise prohibited by law or against a recommendation by CRG's counsel, and without relinquishing or modifying CRG's authority to disclose information under the terms of this Agreement, CRG will cooperate reasonably with the Client in actions that the Client deems necessary or appropriate under the circumstances to protect the confidentiality of the Confidential Information.

   (d) CRG may disclose Client's name for purposes of internal marketing materials only and will not otherwise disclose information as contemplated under this Section 3.

4. **No Third-Party Beneficiaries; Use of CRG's Work Product by Client.** The Client acknowledges that all information, whether written or oral, created, prepared, or compiled by CRG in connection with this Agreement is intended solely for the benefit and use of the Client. No other individual or entity shall be entitled to rely on such information for any purpose. Client agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Client's board of directors, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon CRG's prior written consent. Without limiting the foregoing, the Client shall not (and shall not authorize any other individual or entity to) use CRG's name or to make available to third parties any information created, prepared, or compiled by CRG under this Agreement for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties without CRG's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Client's dissemination and use of information and work product, CRG shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Client concerning any information created, prepared, or compiled, in whole or in part, by CRG pursuant to this Agreement, which may be disclosed only after prior written approval by CRG or as required by applicable law, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to CRG's engagement under this Agreement in required public filings or court documents.

5. **Independent Contractor Status.** CRG is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any CRG Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Client, unless expressly agreed to in a writing signed by Client and CRG. As an independent contractor, CRG will have exclusive control over the management and operation of CRG, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in the Scope, the CRG personnel that provide services to the Client under this Agreement may also provide services to other past, present or future CRG clients in connection with unrelated matters. In addition, CRG may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement.

6. **Appointment as Officer and/or Director.** CRG understands that the Client's officers and directors are covered by appropriate D&O insurance policies. Should the Client agree to elect a CRG representative as an officer or director, the Client shall agree to name such CRG representative and CRG as additional insureds under these policies and under "tail" policies that the Company may purchase during CRG's engagement. The Company further agrees to provide evidence of this coverage as soon as it is in place. It is mutually understood that in naming such CRG representative as an officer or director of the Company, that such CRG representative will remain at all times an employee of CRG and not become an employee of the Company and will be compensated solely by CRG. It is further understood by the parties that this engagement letter is not an employment contract.

7. **No Fiduciary Relationship.** Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Client, including without limitation, the Client's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and (b) CRG, CRG's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of CRG or CRG affiliates (all of the foregoing in this subpart (b) collectively, the "CRG Parties," and each a "CRG Party") on the other hand.

8. **Indemnity by Client.** As part of the consideration for the agreement of CRG to furnish its services pursuant to this engagement letter, the Company agrees to indemnify and hold harmless CRG, its officers, directors, agents and employees any successors and assigns (each, an "Indemnified Party") to the fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement, including, without limitation, any and all of such Indemnified Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all of such Indemnified Parties' legal fees and expenses; provided, however, that the Company shall not be responsible for any losses, claims, damages, liabilities or expenses of any Indemnified Parties to the extent, and only to the extent, that it is finally judicially determined that they are due primarily to such Indemnified Party's bad faith, willful misconduct or gross negligence. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to CRG at common law or otherwise, (ii) shall survive the expiration of CRG's engagement hereunder, (iii) shall apply to any modification of CRG's engagement hereunder and shall remain in full force and effect following the completion or termination of the engagement as amended or modified, and (iv) shall be binding on any successor or assign of the Company and its successors or assigns.

9. **Alternative Dispute Resolution Procedure.** The parties agree to arbitrate any claims or disputes concerning, relating to, or arising out of this Agreement, except claims or disputes: a) where the amount in controversy exceeds $500,000; or b) where the Client, or any individual or other entity comprising the Client, files a voluntary bankruptcy under title 11 of the United States Code, or has an involuntary bankruptcy petition under title 11 of the United States Code filed against it. If the alternative dispute resolution procedure applies, then any claim or dispute concerning, relating to, or arising out of this Agreement shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association, or such other rules to which CRG agrees. The arbitration shall be conducted in New York, NY.

10. **Non-Solicitation.** For a period of six (6) months after the later of: (a) the completion of all services to be provided by CRG under this Agreement; or (b) termination of this Agreement, neither the Client nor CRG, including any affiliates thereof, shall hire, retain or utilize (other than the Client through CRG) the services of any current or former employee of either party or independent contractor who provided services under this Agreement at any time. The Client and CRG agree and acknowledge that the non-breaching party's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions such party will, in addition to

such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law.

11. **Client's Joint and Several Liability; Contractual Right of Setoff in Favor of CRG.** If the Client consists of one or more individuals or entities, then the Client's obligations under this Agreement shall be joint and several obligations of each individual or entity comprising the "Client." Each such individual or entity shall execute this Agreement. Without limiting any other remedy that may be available to CRG under this Agreement or applicable law, where the "Client" under this Agreement consists of more than one individual or entity, then CRG shall have against each such individual or entity a right of setoff (notwithstanding any lack of mutuality) under which CRG may set off against any claim against CRG by any individual or entity comprising the Client group, all of the claims that CRG may have against any or all of the individuals or other entities that comprise the Client.

12. **Attorneys' Fees and Expenses.** The Client shall pay all costs and expenses, including attorneys' fees and expenses, incurred by CRG to enforce this Agreement, including, but not limited to any indemnity provision of this Agreement. This obligation to pay CRG's attorneys' fees and expenses shall apply whether such fees and expenses are incurred during trial or appeal, or in arbitration, a bankruptcy case, or otherwise. If so required, CRG shall additionally be entitled to reimbursement of reasonable legal expenses associated with any required court approval of this Agreement or enforcement of provisions of this Agreement, including, but not limited to, fee applications. Client shall reimburse CRG for all such expenses upon presentation of the invoice for the same supported by appropriate documentation.

13. **Consent; Entire Agreement.** In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter, and supersedes all prior agreements and understandings between the Client and CRG with respect to such subject matter. The parties agree that all terms of their agreement and understanding are embodied in this Agreement, and as modified or supplemented from time to time, but only if such modification or supplement is both: (i) in writing, and (ii) signed by all parties.

14. **Multiple Originals.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded via email.