# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL MOTORSPORT GROUP, INC., et al.,[1] | Case No. 08-10192 (KJC)<br>Jointly Administered |
| Debtors. | **Re: Docket No. 12** |

### RESPONSE BY THE OFFICAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §363 FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF CRG PARTNERS GROUP LLC TO PROVIDE RESTRUCTURING SERVICES TO THE DEBTORS AND OF T. SCOTT AVILA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE

The Official Committee of Unsecured Creditors of Global Motorsport Group, Inc., et al. (the "Committee"),[2] by its undersigned counsel, submits this response (the "Response") to the Motion of the Debtors Pursuant to 11 U.S.C. §363 for Entry of an Order Authorizing Employment and Retention of CRG Partners Group LLC to Provide Restructuring Services to the Debtors and of T. Scott Avila as Chief Restructuring Officer of the Debtors Nunc Pro Tunc to the Petition Date (the "Motion"), and in support thereof, respectfully states as follows:

## Background

1. On January 31, 2008 (the "Petition Date"), Global Motorsport Group, Inc. ("GMG"), Custom Chrome Manufacturing, Inc. dba Santee Industries, Custom Chrome Europe, Ltd. ("CCE") and Custom Chrome Far East, Ltd. (collectively, the "Debtors"),

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Global Motorsport Group, Inc. (6138); Custom Chrome Manufacturing, Inc. d/b/a Santee Industries (2016); Custom Chrome Europe, Ltd. (8828); and Custom Chrome Far East, Ltd. (8827). The address for all Debtors is 16100 Jacqueline Ct., Morgan Hill, CA 95037.

[2] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Cade (the "Bankruptcy Code"). Since the filing of these cases, the Debtors have remained in possession of their properties and continued to operate their businesses and manage their properties as debtors in possession.

2. Immediately prior to the filing of the petitions, Debtors GMG and CCE entered into an Asset Purchase Agreement with Dae-Il USA, Inc. ("Dae-Il"), which provides for the sale of substantially all of the assets of GMG and CCE for $16 million in cash and certain other consideration, free and clear of liens, claims and interests.

3. On the Petition Date, the Debtors filed, among other pleadings, the Motion and a motion to approve the 363 Sale (the "Sale Motion").

4. On February 6, 2008, the Office of the United States Trustee appointed the Committee. On that date, the Committee retained Andrews Kurth LLP and Bayard, P.A. as co-counsel to the Committee (collectively, "Committee Counsel"). Subsequently, the Committee retained NachmanHayesBrownstein as its financial advisors.

5. By the Motion, the Debtors request that the Court authorize the retention of CRG to provide "restructuring services" and the appointment of T. Scott Avila as Chief Restructuring Officer. The Motion provides that CRG will (i) assist with the 363 Sale for the benefit of economic stakeholders; (ii) assist in the prosecution of the Debtors chapter 11 cases, including developing business plans and cash flow forecasts; (iii) assist in the potential development, proposal, negotiation and confirmation of any plan of reorganization; (iv) assist in the development and execution of plans to dispose of any non-core assets; (v) assist in the preparation of reports and communication with the lender and constituencies; (vi) develop and implement various strategic alternatives as

{00738241;v3}

approved by the Board of Directors; (vii) assist in the day-to-day management of the operations of the Debtors' business; and (viii) assist with such other matters as may be requested that fall within their expertise and are mutually agreeable with the Board of Directors. The Debtors also seek approval of the appointment of T. Scott Avila, a managing partner with CRG, as Chief Restructuring Officer, to be compensated at $450 per hour. Other CRG employees would assist Mr. Avila at a rate of $125-$375 per hour, depending on their experience.[3]

6. CRG and its predecessor have a long history with the Debtors. For approximately three years prior to the Petition Date, Corporate Revitalization Partners ("CRP") and The Recovery Group ("TRG"), who merged on July 1, 2007 to become CRG, provided restructuring services to GMG. Additionally, Mr. Avila served as Chief Restructuring Officer of GMG from July 25, 2005 to December 31, 2005. He returned to this position in October, 2007.

7. In the face of CRG's lengthy relationship with the company, CRG's letter agreement (the "Engagement Letter") provides that the Debtors will indemnify CRG and Mr. Avila to the "fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement... however, the Company shall not be responsible for losses, claims, damages, liabilities, or expenses... due primarily to [CRG or its officer's] bad faith, willful misconduct or gross negligence."

---

[3] The Debtors further request in the Motion that the fees and expenses incurred by CRG be paid weekly, without the need for filing fee applications in the Bankruptcy Court as required by other professionals.

3

## Response

8. The Committee cannot consent to the Motion at this time because (i) there has not been a sufficient showing that the scope and corresponding cost of the retention of CRG and Mr. Avila is necessary given the current direction of these cases; (ii) CRG and Mr. Avila are not "disinterested" under 11 U.S.C. § 101(14)(E); and (iii) given the long history, the proposed indemnification and other retention terms appear overly broad or generous.

9. As a starting point, the Committee notes that the Debtors do not make any showing that Mr. Avila has any knowledge or experience in the Debtors' industry, yet they seek to retain him as their restructuring officer for an indefinite period. Yet, prior to the bankruptcy the Debtors negotiated and then entered into an agreement to sell substantially all of their assets, and now post-petition are seeking to consummate that sale within a month. If successful, in a few days the Debtors will no longer have any ongoing businesses. After little more than a month into these cases there will no longer be much of a debtor and one creditor (Abelco) – who through its affiliate controls the company – is poised to determine the direction of this bankruptcy.

10. Accordingly, after the Debtors' imminent 363 Sale, if approved, it is unclear to the Committee what there will be for CRG or Mr. Avila to "restructure." The Committee does not understand why the estate should bear the cost of the fees proposed in the Engagement Letter to administer a mostly liquidated estate. This is particularly true when it is not even clear that these cases will proceed on a chapter 11 plan track following the sale.

11. With these uncertainties and questions alone, the Committee is not in

4
{00738241;v3}

position to consent to this retention, particularly its proposed scope and cost.

12. Additionally, in the Motion the Debtors state that "(a) CRG and Mr. Avila are 'disinterested' within the meaning of 101(14) of the Bankruptcy Code, and hold no interest adverse to the Debtors or their estates with respect to the matters as to which CRG and Mr. Avila are to be employed and (b) neither CRG or Mr. Avila have a connection to the Debtors, their creditors, or related parties except as disclosed in the Avila Declaration."

13. The Committee does not understand how that assertion can be made. Section 101(14)(E) of the Bankruptcy Code defines a "disinterested person" as a person that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . ., or for any other reason."

14. Here, CRG and Mr. Avila have a longstanding connection with the Debtors. Indeed, the Debtors have been receiving "restructuring" advice for nearly three years. Further, the Declaration of T. Scott Avila discloses that during the ninety days prior to the Petition Date, CRG received $806,252.43 (the "Prepetition Payments") from the Debtors. The Committee does not have enough information to assess whether these payments constituted avoidable transfers under the Bankruptcy Code.[4]

15. Quite simply, any avoidable transfers would inure to the benefit of unsecured creditors. As such, the engagement of CRG and Mr. Avila may be materially

---

4 The Third Circuit Court of Appeals has held that a professional that receives preferential transfers has an actual conflict of interest prohibiting that professional from representing a debtor. See In re Marvel Entertainment Group, Inc., 140 F.3d 463, 476 (3d Cir. 1998); see also In re Pillowtex, Inc., 304 F.3d 246, 255 (3d Cir. 2002) (remanding to the district court to determine if the proposed attorneys received a preferential transfer); United States .Trustee v, First Jersey Securities, Inc. (In re First Jersey Securities, Inc.), 180 F.3d 504, 514 (3d Cir. 1999) (holding that a law firm that was the recipient of a preferential transfer was disqualified from representing a debtor).

5

adverse to the interests of the estates and of creditors. The Committee needs more information on this issue.

16. Further, several terms of this retention cause the Committee concern. For instance, under the Motion CRG would have unfettered rights to staff this matter as it wishes, with the cost borne by the estates. This increased expense is proposed without the ability of the Court, the Committee or even the Debtors to timely review and object to the proposed staffing of the matter.

17. Given that this case is seemingly headed to a quick sale, any retention should be conditioned upon requiring CRG and Mr. Avila to obtain the Committee's prior approval of staff assignments. In fact, the Committee is not convinced that CRG or Mr. Avila should play more than a minimal role following the contemplated 363 Sale. Also, rather than simply producing quarterly statements for services rendered and expenses incurred, the Committee believes more regular billing should be required. Such statements must provide more detail on CRG's fees and expenses so that the Committee and other parties in interest can more accurately determine whether such fees and expenses were reasonable and necessary – and authorized.

18. Importantly, the Committee also believes that it is inappropriate to grant such broad indemnification and exculpation provisions. Again, there is a lengthy relationship with the Debtors here – an almost 3 year "restructuring." Therefore, at a minimum, the Committee must object to the extent the indemnification covers any prepetition claims against CRG or Mr. Avila.

19. Finally, given the current posture of these cases, the Committee suggests that if CRG and Mr. Avila are retained, the retention should be limited to a period of no

6

more than 60 days, subject to renewal of the retention on renegotiated terms upon either approval from the Court or the consent of the Committee. This approach protects all parties in interest as these cases proceed.

Dated: February 22, 2008  
       Wilmington, DE

BAYARD, P.A.

By: /s/ Jeffrey M. Schlerf
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
Kathryn D. Sallie (No. 4600)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

-and-

James Donnell, Esquire
Andrews Kurth LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

-and-

John J. Sparacino, Esquire
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Facsimile: (713 220-4285

*Proposed Counsel for the Official Committee of Unsecured Creditors*