such other date and upon such other terms as may be agreed upon in writing by that Holder, the Debtors or the Liquidating Debtors (as the case may be), and the Agent.

Notwithstanding any provision in the Plan regarding payment of Administrative Claims to the contrary, and without waiver of any argument that such Claim is already time-barred by prior orders of the Bankruptcy Court, all Administrative Claims required to be Filed and not Filed by the Administrative Claim Bar Date shall be deemed disallowed and discharged. As provided herein, the Administrative Claims/Priority Claims Account will include funds sufficient to cover the aggregate asserted amount of all disputed Administrative Claims. Without limiting the foregoing, all unpaid fees payable under 28 U.S.C. § 1930, shall be paid on the Effective Date.

## C.    Professional Fee Claims

Subject to Confirmation of the Plan, the Liquidating Debtors shall pay Professionals from the Professional Fees Account their respective Allowed Professional Fee Claim in the maximum amount of i) 80% of Allowed fees and 100% of Allowed expenses of Professional Fee Claims incurred by Pachulski, Stang, Ziehl and Jones LLP; Fox Rothschild LLP; The Bayard Firm; CRG LLP; and Nachman Hayes LLP for the period of January 31, 2008 through November 30, 2008; (ii) 100% of Allowed fees and 100% of Allowed expenses incurred by Pachulski, Stang, Ziehl and Jones LLP; Fox Rothschild LLP; The Bayard Firm; CRG, LLP; and Nachman Hayes LLP for the period of December 1, 2008 through the Effective Date up to the maximum aggregate amount of $125,000.00; and (iii) 60% of allowed fees and 100% of allowed expenses of Andrews & Kurth LLP. The Professional Fees Account shall be augmented with any excess funds in the Administrative Claims/Priority Claims Account after payment in full of all Allowed Administrative Claims and Priority Claims with such excess funds being used solely to pay any unpaid Allowed Professional Fee Claims and expenses of Pachulski, Stang, Ziehl and Jones LLP, Fox Rothschild LLP; The Bayard Firm, CRG, LLP and Nachman Hayes LLP in full satisfaction of their respective fees and expenses incurred in connection the Chapter 11 cases.

The Bankruptcy Court must rule on and allow all Professional Fee Claims before the fees will be owed and paid. For all pre-Effective Date Professional Fee Claims, except Bankruptcy Clerk's Office fees and U.S. Trustee's fees, the Professional in question must file and serve a properly noticed final fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses Allowed by the Bankruptcy Court will be owed and required to be paid under the Plan.

The Liquidating Debtors and the GUC Trustee may retain and compensate professionals for services rendered following the Effective Date without order of the Bankruptcy Court.

Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must File and serve, pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. Holders of Administrative Claims (including, without limitation,

28

Professionals) requesting compensation or reimbursement of such expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code that do not file such requests by the applicable deadline provided for herein shall be forever barred from asserting such claims against the Debtors, the Estates, the Liquidating Debtors, the GUC Trust, the GUC Trustee or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

**D.      Priority Tax Claims**

On the later to occur of (i) the Effective Date or (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Debtors shall pay to each Holder of an Allowed Priority Tax Claim such Allowed Priority Tax Claim without interest from the funds in the Administrative Claims/Priority Claims Account.

## VI.
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.      Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.      Classification and Treatment of Claims**

The classification of Claims and Equity Interests pursuant to the Plan are as follows:

**1.      Summary**

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and Distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

29

## 2. **Classification and Treatment of Claims Against All Debtors**

The classification of Claims and Equity Interests against all Debtors pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Claims | Impaired | Entitled to Vote |
| Class 2—Lender Group Claims | Impaired | Entitled to Vote |
| Class 3 – Other Secured Claims | Impaired | Entitled to Vote |
| Class 4—General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 – Intercompany Claims | Impaired | Not Entitled to Vote |
| Class 6—Equity Interests in GMG | Impaired | Not Entitled to Vote |

    a.    <u>Class 1 – Priority Claims</u>

        i.    Classification: Class 1 consists of the Priority Claims against any of the Debtors.

        ii.    Treatment: The Liquidating Debtors shall pay the Allowed amount of each Class 1 Priority Claim from the Administrative Claims/Priority Claims Account to each Entity holding a Class 1 Priority Claim promptly following the later of (a) the Effective Date and (b) the date such Class 1 Priority Claim becomes an Allowed Claim (or as otherwise permitted by law). The Liquidating Debtors shall pay each Holder of a Class 1 Priority Claim in Cash in full in respect of such Allowed Claim without interest accruing from the Petition Date, or on such less favorable terms as may be agreed to in writing by such Holder.

        iii.    Voting: Class 1 is impaired and Holders of Class 1 Claims are entitled to vote on the Plan.

    b.    <u>Class 2 – Lender Group Claims</u>

        i.    Classification: Class 2 consists of the Lender Group Claims against any of the Debtors.

        ii.    Treatment: Subject to the funding of the Agent Contribution and GUC Fund Expenses Reserve, the Agent on behalf of, and for distribution to, the Lender Group pursuant to the Pre-Petition Credit Documents and DIP Credit Documents, shall retain all distributions made prior to the Effective Date in full and final

satisfaction of the Lender Group Claims. Such distributions shall be deemed indefeasibly paid in full and not subject to disgorgement. All other Lender Group Claims shall be waived.

  iii. Voting: Class 2 is an Impaired Class and Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

c. Class 3 – Other Secured Claims

  i. Classification: Class 3 consists of the Other Secured Claims (if any), against any of the Debtors.

  ii. Treatment: With respect to Holders of Allowed Class 3 Claims, the following alternative treatment shall apply, at the Debtors' option: (i) each Holder shall receive on the Effective Date the net Liquidation Proceeds from the Assets of the Debtors upon which it holds a Lien senior to the Lien of the Agent (for itself and the Lender Group) or (ii) the Debtors or the Liquidating Debtors shall abandon the collateral securing such creditor' claim to such creditor as full and complete satisfaction of all Class 3 Claims.

  iii. Voting: Class 3 is an Impaired Class and Holders of Class 3 Claims are entitled to vote on the Plan.

d. Class 4 – General Unsecured Claims

  i. Classification: Class 4 consists of General Unsecured Claims against any of the Debtors.

  ii. Treatment: Each Holder of an Allowed General Unsecured Claim against the Debtors shall receive a Pro Rata share of the GUC Distributable Assets, as determined by the GUC Trustee.

  iii. Voting: Class 4 is an Impaired Class and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

e. Class 5 – Intercompany Claims

  i. Classification: Class 5 consists of the Intercompany Claims against any of the Debtors.

  ii. Treatment: On the Effective Date, all Intercompany Claims shall be cancelled and Holders of Intercompany Claims shall not receive or retain any Distribution or property on account of such Intercompany Claims under the Plan.

  iii. Voting: Although the Class 5 Creditors are the proponents of the Plan, Holders of Class 5 Claims shall receive no Distribution under

the Plan and therefore are deemed to have rejected the Plan. Accordingly, Class 5 Creditors are not entitled to vote.

    f.    Class 6 – Equity Interests

        i.    Classification: Class 6 consists of all Equity Interests against any of the Debtors.

        ii.    Treatment: There shall be no Distribution made on account of Class 6 Equity Interests. After the entry of the Effective Date, the Equity Interests will be canceled and will cease to exist.

        iii.    Voting: Holders of Class 6 Equity Interests will receive no Distribution under the Plan and are, therefore, deemed to have rejected the Plan. Accordingly, Class 6 Equity Interests are not entitled to vote.

# VII.
# ACCEPTANCE OR REJECTION OF THE PLAN

## A.    Voting Classes

Each Holder of an Allowed Claim in Classes 1, 2, 3 and 4 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

## B.    Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

## C.    Presumed Rejection of Plan

As indicated, Classes 5 and 6 shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

## D.    Nonconsensual Confirmation

Because certain classes are deemed to reject the Plan by operation of law, the Debtors will request the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled

to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended in accordance with section XVII of the Plan and the Debtors reserve the right to seek confirmation of the Plan, as amended, over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

## E.    How to Vote

A form of Ballot is being provided to Creditors in Classes 1, 2, 3 and 4 by which Creditors in such Classes may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives Creditors one important choice to make with respect to the Plan – the decision to vote for or against the Plan. To vote on the Plan, please complete the Ballot, as indicated thereon, (1) by indicating on the enclosed ballot that (a) you accept the Plan or (b) reject the Plan and (2) by signing your name and mailing the ballot in the envelope provided for this purpose. Epiq Bankruptcy Solutions, LLC, as the claims and balloting agent, will count the Ballots.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 P.M. EASTERN TIME ON _____, 2009 AT THE FOLLOWING ADDRESS:

Global Motorsport Group Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5115
New York, NY 10150-5115

- OR -

Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY  10017
Attn:  Ron Jacobs

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE. FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.

## VIII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.    Revesting/Handling of Plan Assets.

The Assets shall be held by the Liquidating Debtors in trust for Creditors and shall be distributed only in accordance with the Plan. On the Effective Date, the Debtors shall, to the extent of any Cash or, where applicable, unencumbered Cash, and with funds as needed from the

Agent Contribution (a) create and fund the (i) Professional Fees Account and (ii) Administrative Claim/Priority Claim Account and (b) transfer to the GUC Trust the amount necessary to establish the GUC Fund and GUC Fund Expenses Reserve. In addition, on the Effective Date, the Debtors shall be deemed to transfer to the GUC Trust the Preserved Avoidance Actions and other Causes of Action. Except as otherwise provided in the Plan and the Confirmation Order, such Assets shall be free and clear of all Claims and Liens. The Liquidating Debtors shall promptly pay the Holders of (a) Allowed Administrative Claims, (b) Allowed Professional Fee Claims, (c) Allowed Priority Tax Claims and (d) the Holders of Allowed Claims in Class 1, Class 2 and Class 3, as provided for under the Plan. In addition, with respect to Class 3 Claimants who did not receive proceeds from the sale of their collateral, the Liquidating Debtors shall arrange to abandon to such Creditors the collateral securing their respective Claims. The Liquidating Debtors shall make the Cash payments to the Holders of Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Liquidating Debtors in their sole discretion, or by wire transfer from a domestic bank, at the Liquidating Debtors' option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the Liquidating Debtors). Any excess funds in the Administrative Claim/Priority Claim Account after all Allowed Administrative Claims, Priority Tax Claims and Priority Claims are paid in full shall be deposited into the Professional Fees Account and shall be available to pay any unpaid Allowed Professional Fees of Pachulski, Stang, Ziehl and Jones LLP; The Bayard Firm; CRG, LLP; Fox Rothschild LLP; and Nachman Hayes LLP. Any Cash remaining in the Professional Fees Account after all Allowed Professional Fees of Pachulski, Stang, Ziehl and Jones LLP; The Bayard Firm; Fox Rothschild; CRG, LLP; and Nachman Hayes LLP are paid in full shall revert to the Agent on account of the Lender Group and the Liquidating Debtors shall return such funds to the Agent.

## B. Payment of Plan Expenses.

All Plan Expenses may be paid by the Responsible Officer without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of Plan Expenses shall be submitted to the Bankruptcy Court for resolution.

## C. Liquidation and Dissolution of the Liquidating Debtors.

The Liquidating Debtors shall conduct no business following the Effective Date other than winding up their affairs in accordance with applicable law and the provisions of the Plan. Without limiting the generality or effect of the foregoing, following the Effective Date the Liquidating Debtors shall: (i) undertake those transactions that are necessary, advantageous or practicable to obtain the maximum value from the Assets; and (ii) exercise their best efforts and endeavor in good faith and without undue delay to liquidate all Professional Fee Claims, Administrative Claims, Priority Tax Claims, Claims in Classes 1 through 3 and the Assets. Except as otherwise provided in the Plan or the Confirmation Order, pursuant to applicable bankruptcy and non-bankruptcy law, the Liquidating Debtors (acting through the Responsible Officer) shall be authorized to (i) wind up their affairs and dissolve and (ii) put into effect and carry out the terms of the Plan and any orders of the Bankruptcy Court entered in the Chapter 11 Cases, without further action by their boards of directors or stockholders.

## D. Power and Authority of Responsible Officer.

From and after the Effective Date, the Liquidating Debtors will be managed and governed by the Responsible Officer who shall act as the representative of the Liquidating Debtors. Activities of the Liquidating Debtors as permitted and limited under the Plan will be managed by the Responsible Officer. To the extent applicable, the Responsible Officer may use lower priced employees of his firm as he deems appropriate. Compensation and reimbursement of the Responsible Officer, and any lower priced employees from his or her firm (if any), shall be considered Plan Expenses. Confirmation of the Plan shall constitute the appointment of the Responsible Officer by the Bankruptcy Court as the representative of the Liquidating Debtors to (a) exercise the rights, power and authority of the Liquidating Debtors under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, (b) retain professionals to represent the Liquidating Debtors in performing and implementing the Plan, (c) marshal and liquidate the Assets and to collect the Plan Proceeds for the benefit of Creditors, (d) resolve Disputed Claims of Holders of Professional Fee Claims, Administrative Claims, Priority Claims and Claims in Classes 1 through 3 and effectuate distributions to Holders of Allowed Professional Fee Claims, Administrative Claims, Priority Claims and Claims in Classes 1 through 3 under the Plan, (e) make all distributions contemplated hereby and (f) otherwise implement the Plan, wind up the affairs of the Debtors and close the Chapter 11 Cases. The compensation arrangements with the Responsible Officer shall be subject to approval by the Bankruptcy Court prior to the Effective Date. On the Effective Date, the Responsible Officer will be deemed to have retained the Debtors' Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court. Except as otherwise provided in the Plan or the Confirmation Order, the Responsible Officer shall (i) be authorized to execute a certificate of dissolution for the Liquidating Debtors pursuant to applicable non-bankruptcy law, or otherwise take any necessary steps required to wind up the Debtors under applicable law, at such time as the Liquidating Debtors have fully wound up their affairs in accordance with applicable law pursuant to the provisions of the Plan, (ii) serve until the Liquidating Debtors are dissolved and a final decree is entered closing their Chapter 11 Cases, unless earlier removed by the Bankruptcy Court for cause shown, after notice and a hearing, (iii) ensure that the Liquidating Debtors comply with their obligations to pay statutory fees under 28 U.S.C. § 1930(a)(6), and (iv) file all post-Confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local Bankruptcy Rules, or any applicable Guidelines of the United States Trustee. Upon the removal of the Responsible Officer for cause, or if the sitting Responsible Officer becomes unable, unavailable or unwilling to continue to serve, the Bankruptcy Court will appoint a replacement upon the request of any party in interest.

## E. The GUC Trust.

The GUC Trust shall be created on the Effective Date. The GUC Trustee owes its fiduciary duties to Holders of Claims in Class 4 hereunder, and such Holders are the primary beneficiaries of the GUC Trust. The GUC Trust Assets shall be held by the GUC Trustee in trust for the Holders of Claims in Class 4 hereunder and shall be distributed only in accordance with the Plan. From and after the Effective Date, the GUC Trustee shall retain and pursue the Preserved Avoidance Actions and any other Causes of Action on such terms and conditions as are consistent with the interests of primary beneficiaries of the GUC Trust. In addition, from and

after the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, the GUC Trustee shall be free to operate without any limitation or restriction by, and without any requirement to comply with, the Bankruptcy Code, Bankruptcy Rules, or Guidelines of the United States Trustee. All Cash and all Litigation Recoveries realized or obtained by the GUC Trustee shall be deposited into the GUC Trust in accordance with the Plan and such funds shall be held in trust as GUC Trust Assets and shall be distributed in accordance with the Plan, the GUC Trust Agreement, and section 1123 of the Bankruptcy Code.

## F.   GUC Fund.

The GUC Trustee shall (a) from the amount received from the Liquidating Debtors pursuant to Section 5(A) of the Plan and the Preserved Avoidance Actions and other Causes of Action vested in it on the Effective Date, create and fund the GUC Fund and the GUC Fund Expenses Reserve and (b) periodically deposit the Litigation Recoveries into the GUC Fund to satisfy the obligations to Holders of Claims in Class 4 created under the Plan. All GUC Fund Expenses may be deducted and paid from the GUC Fund and/or the GUC Fund Expenses Reserve without further order of the Bankruptcy Court. Unless otherwise provided in the Confirmation Order, the GUC Fund and GUC Fund Expenses Reserve shall be invested by the GUC Trustee in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code and in his reasonable and prudent exercise of discretion. The GUC Trustee shall have no obligation or liability to beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

## G.   Causes of Action.

Except as otherwise provided in the Plan, all Causes of Action are retained, vested and preserved pursuant to section 1123(b) of the Bankruptcy Code. From and after the Effective Date all Preserved Avoidance Actions and any other Causes of Action will be vested in and prosecuted or settled by the GUC Trustee. To the extent any Preserved Avoidance Action or other Cause of Action is already pending on the Effective Date, the GUC Trustee, as successor to the Debtors or the Committee (in any derivative capacity or as an intervening party), will continue the prosecution of such Preserved Avoidance Action or other Cause of Action and shall be substituted as plaintiff, defendant or in any other capacity for the Debtors or the Committee pursuant to the Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action or matter before the Bankruptcy Court. Any Litigation Recovery from the Preserved Avoidance Actions and any other Causes of Action will be deposited in the GUC Fund for the benefit of holders of Allowed Claims in Class 4.

## H.   Payment of GUC Trust Expenses.

All GUC Fund Expenses may be paid by the GUC Trustee from the GUC Fund Expenses Reserve or other available funds of the GUC Fund without further notice to Creditors or approval of the Bankruptcy Court. Any disputes concerning the payment of GUC Fund Expenses shall be submitted to the Bankruptcy Court for resolution.

# I. Distribution of GUC Trust Proceeds.

The GUC Trust Assets shall be used to satisfy the payments required under the Plan to Holders of Allowed Claims in Class 4, provided that the GUC Trustee shall only distribute GUC Trust Assets to the Holders of such Allowed Claims in such amounts and at such times as are set forth in the Plan. No payments or Distributions shall be made by the GUC Trustee on account of Disputed Claims unless and to the extent such Claims become Allowed Claims in Class 4. The GUC Trust Assets allocated to Disputed Claims will not be distributed but will be reserved in the GUC Fund by the GUC Trustee in accordance with the Plan pending resolution of such Disputed Claims.

## J. Power and Authority of GUC Trustee in Accordance with the GUC Trust Agreement.

From and after the Effective Date the GUC Trust will be managed and governed by the GUC Trustee, as set forth in the GUC Trust Agreement. Confirmation of the Plan shall constitute the appointment of the GUC Trustee by the Bankruptcy Court as the representative of the Estate as to Class 4 Claims, subject to the terms of the GUC Trust Agreement to: (a) exercise the rights, power and authority of the GUC Trust under applicable provisions of the Plan and bankruptcy and non-bankruptcy law; (b) retain professionals to represent the GUC Trust in performing and implementing the Plan; (c) marshal and liquidate the GUC Trust Assets and to collect the GUC Trust Assets for the benefit of Holders of Claims in Class 4; (d) prosecute the Preserved Avoidance Actions and other Causes of Action; and (e) resolve Disputed Claims in Class 4 and effectuate distributions to Holders of Allowed Claims in Class 4 under the Plan. The compensation arrangements with the GUC Trustee shall be disclosed to the Bankruptcy Court prior to the Effective Date. On the Effective Date, the GUC Trustee will be deemed to have retained the Committee's Professionals under the arrangements existing on the Effective Date, without any need for further orders of the Bankruptcy Court. The GUC Trustee shall serve until the GUC Trust Assets have been fully distributed, a Final Decree is entered closing the Chapter 11 Cases and the GUC Trustee has completed a wind-down of the administration of the GUC Trust and such other activities as designated in the Confirmation Order. If the then current GUC Trustee is unable, unavailable or unwilling to serve, subject to the terms of the GUC Trust Agreement, or has been earlier removed by the Bankruptcy Court for cause shown, subject to the terms of the GUC Trust Agreement, after notice and a hearing, the Bankruptcy Court will appoint a replacement pursuant to the GUC Trust Agreement. The GUC Trustee shall be responsible for ensuring that the GUC Trust complies with its obligation to pay statutory fees soley related to its disbursements under 28 U.S.C. § 1930(a)(6) and the GUC Trustee shall file all post-Confirmation reports required by the Bankruptcy Rules, the Bankruptcy Court, the Local Bankruptcy Rules, or any applicable Guidelines of the United States Trustee with respect to the GUC Trust. In addition, the GUC Trustee will be responsible for preparation of all hearing agenda and hearing binders required by the Local Bankruptcy Rules.

## K. GUC Distribution Procedures.

Except as otherwise agreed by the Holder of a particular Claim, or as provided in the Plan, all amounts to be paid by the GUC Trustee under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. Beginning on and after the Effective Date,

subject to the Plan and the GUC Trust Agreement, the GUC Trustee shall make interim and final distributions of GUC Trust Assets to the Holders of Allowed Class 4 Claims from the GUC Fund. Notwithstanding any provision to the contrary in the Plan, Distributions may be made in full or on a Pro Rata basis depending on: (x) the amount of the Allowed Claim, (y) the then available GUC Trust Assets, and (z) the then anticipated GUC Trust Assets. The GUC Trustee shall make the Cash payments to the Holders of Allowed Claims: (aa) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the GUC Trustee in its sole discretion, or by wire transfer from a domestic bank, at the GUC Trustee's option, and (bb) by first-class mail (or by other equivalent or superior means as determined by the GUC Trustee).

**L.    Dissolution of the Committee.**

On the Effective Date, the Committee shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations except for any act necessary for the Committee's Professionals to file, serve, and prosecute applications for final allowance of compensation and reimbursement of expenses.

**M.    Full and Final Satisfaction.**

Commencing upon the Effective Date, the Liquidating Debtors and the GUC Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Class 4 Claims according to the provisions of the Plan. Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Liquidating Debtors and the GUC Trust shall have no liability on account of any Claims or Interests except as set forth in the Plan and in the GUC Trust Agreement. All payments and all distributions made by the Liquidating Debtors and the GUC Trustee under the Plan shall be in full and final satisfaction, settlement and release of all Claims filed against the Debtors' estates; provided, however, that nothing contained in Section 5(M) of the Plan, or in any other provision of the Plan, shall be deemed to constitute or result in a discharge of the Debtors under Bankruptcy Code section 1141(d).

**N.    Resolution of Disputed Claims.**

All objections to Claims shall be filed and served not later than 180 days following the Effective Date; provided, however, such date may be extended by the Bankruptcy Court beyond 180 days upon motion (the "Extension Motion") filed by the Liquidating Debtors with respect to Disputed Administrative Claims, Priority Claims or Claims in Classes 1 through 3 or the GUC Trustee with respect to Disputed Claims in Class 4 prior to the deadline established in Section 5(N) of the Plan. If an objection is not timely filed or if no Extension Motion is pending by such deadline, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of the Plan. Unless otherwise provided in the Confirmation Order or the GUC Trust Agreement, the Liquidating Debtors or GUC Trustee, as applicable, is authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of Disallowed Claims.

## O.    Allocation of Distributions.

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## P.    Rounding.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

## Q.    No Interim Cash Payments of Less Than $50 on Account of Allowed Claims.

If an interim distribution to be received by the Holder of an Allowed Claim would be less than $50, notwithstanding any contrary provision in the Plan, at the discretion of the Liquidating Debtors or the GUC Trustee, as applicable, no such interim payment will be made to such Holder, and such Cash shall be held for such Holder until the earlier of (i) the next time an interim distribution is made to the Holders of Allowed Claims (unless the distribution would still be less than $50 in which case Section 5(Q) of the Plan shall again apply), or (ii) the date on which final distributions are made to the Holders of Allowed Claims.

## R.    Unclaimed Property.

Any entity that fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity shall forfeit all rights to any Distribution under the Plan. Upon forfeiture, such Cash (including interest thereon) shall returned to the GUC Fund for redistribution to Holders of Allowed Class 4 Claims to whom Distributions were previously made by the GUC Trustee. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the GUC Trust or any Holder of an Allowed Claim to whom Distributions are made by the GUC Trustee.

## S.    Property Remaining

Any Cash remaining in the Administrative Claim/Priority Claim Account after all Allowed Administrative Claims and Allowed Priority Claims are paid in full shall be deposited into the Professional Fee Account and paid to Pachulski, Stang, Ziehl and Jones LLP, The Bayard Firm, Fox Rothschild, LLP, CRG, LLP and Nachman Hayes LLP on account of any Allowed Professional Fee Claims that remain unpaid. Any Cash remaining in the Professional Fees Account after all Allowed Professional Fees of Pachulski, Stang, Ziehl and Jones LLP; The Bayard Firm; Fox Rothschild; CRG, LLP; and Nachman Hayes LLP are paid in full shall revert to the Agent on account of the Lender Group and the Liquidating Debtors shall return such funds to the Agent.

31606-001\DOCS_DE:146418.8

**T.    Setoffs.**

Nothing contained in the Plan shall constitute a waiver or release by the Liquidating Debtors or the GUC Trust of any right of setoff or recoupment the Liquidating Debtors or the GUC Trust may have against any Creditor.

**U.    No Distributions on Late-Filed Claims.**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first filed after the applicable bar date shall be a Disallowed Claim, and the Liquidating Debtors or the GUC Trustee, as applicable, shall not make any distribution to a Holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Liquidating Debtors or the GUC Trustee, as applicable, shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

**V.    Withholding Taxes.**

Pursuant to section 346(f) of the Bankruptcy Code, the Liquidating Debtors and the GUC Trustee shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Liquidating Debtors and the GUC Trustee shall comply with all reporting obligations imposed on them by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. As a condition to making any Distribution under the Plan, the Debtors, if before the Effective Date, or the Liquidating Debtors and the GUC Trustee, if on or after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors, if before the Effective Date, and the Liquidating Debtors or the GUC Trustee, if on or after the Effective Date, to comply with applicable tax reporting and withholding laws.

**W.    De Minimis Distributions; Charitable Donation.**

Notwithstanding anything to the contrary therein, the GUC Trust shall not be required to make a Distribution if the dollar amount of the Distribution is so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. At the Final Distribution Date, the GUC Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the GUC Trustee, the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Allowed Claims who would otherwise be entitled to such Distributions.

**X.    United States Trustee Fees.**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, the Liquidating Debtors and GUC Trustee shall each pay its share of any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) based upon actual distributions by each entity, and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the case.

## Y.    Books and Records.

As part of the transfer of Assets from the Debtors and their Estates to the Liquidating Debtors on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation to the Liquidating Debtors of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties. The Liquidating Debtors hall provide reasonable and prompt access to the GUC Trust and its representatives and advisors for all books and records relating to the Preserved Avoidance Actions, other Causes of Action and Class 4 Claims, including without limitation, accounts payable information from the Debtors' general ledger and insurance policies relating to any Class 4 Claims.


## IX.
## EFFECT OF CONSUMMATION

### A.    Binding Effect of Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Liquidating Debtors, the GUC Trustee, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code section 1146(a).

### B.    Re-Vesting of Property of Debtors in the Liquidating Debtors; Vesting of GUC Trust Assets in the GUC Trust.

Upon the Effective Date, title to all Assets, other than the GUC Trust Assets, shall re-vest in the Liquidating Debtors upon the Effective Date and shall no longer constitute property of the Estates. Upon the Effective Date, title to all GUC Trust Assets shall vest in the GUC Trust and shall be retained by the GUC Trust for the purposes contemplated under the Plan pursuant to the GUC Trust Agreement. Without limiting the generality of the foregoing, all Litigation Recoveries shall vest in the GUC Trust upon the Effective Date and shall no longer constitute property of the Estate. For federal income tax purposes, the transfer of Assets from the Estates of the Debtors to the GUC Trust will be treated as a deemed transfer to Creditors to the extent that the Creditors are beneficiaries of the GUC Trust, followed by a deemed transfer by the beneficiary-Creditors to the GUC Trust. Further, the beneficiaries of the GUC Trust will be treated as the grantors and deemed owners of the GUC Trust.

## C.     Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Liquidating Debtors and the GUC Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges or other encumbrances of Creditors or Interest Holders, other than as set forth herein, and in the GUC Trust Agreement. Following the Effective Date, the Liquidating Debtors and the GUC Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## D.     Limitation of Liability.

The Debtors, the Committee, the Agent and the Lender Group and their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any Entity for any action in good faith taken or omitted to be taken after the Petition Date in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, implementation, Confirmation or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan and shall not release any action (or inaction) constituting willful misconduct, fraud or gross negligence (in each case subject to determination of such by Final Order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

### 1.     Injunction

Except as otherwise expressly provided in the Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee, the Liquidating Debtors, the GUC Trustee, the Professionals, Agent or Lender Group or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, (i) commencing or continuing in any manner any action or other proceeding of any kind including, without limitation, any action or proceeding against any Entity arising from or otherwise relating to any or all of the transactions contemplated by the Pre-Petition Credit Documents or DIP Credit Documents; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iv) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and (v) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Equity Interest. Except as expressly provided herein, the Debtors, the Liquidating Debtors and the GUC Trustee expressly

reserve all rights and defenses that the Debtors may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.

Nothing in Section 6(D) of the Plan shall prohibit the Holder of a timely Filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of any obligations of the Debtors under the Plan.

### 2.   **Terms of Existing Injunctions or Stays**

Unless otherwise provided herein, all injunctions or stays provided for in these Chapter 11 Cases pursuant to sections 105, 362 or 525(a) of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Plan and Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or enjoined pursuant to the Plan and the Bankruptcy Code.

### E.   **Post-Confirmation Liability of the Responsible Officer and the GUC Trustee.**

The Responsible Officer and the GUC Trustee, together with their respective consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "Indemnified Parties") shall not be liable for any and all liabilities, losses, damages, claims, causes of action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under the Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by Final Order of the Bankruptcy Court). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Debtors, GUC Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Debtors, the GUC Trust and the Estate or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Debtors, the GUC Trust and the Estate. To the extent the Liquidating Debtors or the GUC Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the

Liquidating Debtors or the GUC Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Plan Expenses or GUC Trust Expenses, as applicable. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

## 1. **Good Faith**

Confirmation of the Plan shall constitute a finding that: (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) the solicitation of acceptances or rejections of the Plan by all Entities has been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## 2. **Substantive Consolidation**

### a. Consolidation of these Chapter 11 Cases of the Debtors

The Plan contemplates and shall effect the substantive consolidation of the Estates of the Debtors into a single entity for the purposes of all actions associated with Confirmation and the Consummation of the Plan. On the Effective Date: (a) no Distributions will be made under the Plan on account of the Intercompany Claims among the Debtors; (b) the guarantees of the Consolidated Debtors will be deemed eliminated so that any Claim against the Debtors and any guarantee thereof executed by any Debtor and any joint and several liability of the Debtors with one another will be deemed to be one obligation of these Debtors; and (c) each and every Claim against the Debtors will be deemed asserted against the estate of GMG; any Claim against more than one Debtor will be deemed to be one Claim against the Debtors and will be treated in the same Class regardless of the Debtor. Notwithstanding the substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted or dismissed.

### b. Substantive Consolidation Order.

The Plan shall serve as a motion seeking entry of an order substantively consolidating these Chapter 11 Cases of the Debtors. Unless an objection to substantive consolidation is made in writing by any creditor affected by the Plan as herein provided on or before the Plan Objection Deadline, an order substantively consolidating these Chapter 11 Cases of the Debtors may be entered by the Bankruptcy Court, which order may be the Confirmation Order. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, coincide with the Confirmation Hearing.

### c. Reservation of Rights

The Debtors reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for substantive consolidation of these Chapter 11 Cases of the Debtors, to seek Confirmation of the Plan as if there were no substantive consolidation, and to seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied.

44

# X.
# IMPLEMENTATION OF THE PLAN

## A.    The Creditor Settlement

In consideration of the Lender Group funding of the Agent Contribution and agreeing to accept no distribution in respect of the Lender Group Unsecured Claim, on the Effective Date, the following rights shall vest in the parties:

### 1.    Confirmation of Financing Order.

The provisions of the Financing Order shall be fully binding on the Debtors, their respective Estates, the Committee, the Liquidating Debtors, the GUC Trust, the GUC Trustee, any trustee appointed in any of the Chapter 11 Cases and any trustee appointed in any subsequent or superseding bankruptcy case (including, without limitation, any conversion of any or all of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code), and all other parties in interest. Without limiting the generality of the foregoing, on the Effective Date, (a) the Pre-Petition Obligations and Agent's security interests in and liens upon the Pre-Petition Collateral shall be finally and conclusively recognized and allowed as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Pre-Petition Collateral to the extent provided in the Financing Order, (b) the Pre-Petition Obligations shall be finally and conclusively allowed in the full amount specified in the Financing Order and in the Proofs of Claim filed by the Agent on behalf of the Lender Group pursuant to sections 502 and 506 of the Bankruptcy Code, (c) the releases in favor of the Lender Group as set forth in the Financing Order shall be fully and conclusively effective and binding on the Debtors, their respective estates, the Committee, any trustee appointed in any of the Chapter 11 Cases and any trustee appointed in any subsequent or superseding bankruptcy case (including, without limitation, any conversion of any or all of these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code), the Liquidating Debtors, the GUC Trust, the GUC Trustee, and all other parties in interest, (d) any amounts paid at any time to the Lender Group and their respective professionals (i) prior to the Petition Date, (ii) pursuant to the Financing Order, (iii) pursuant to the Sale Order, or (iv) as otherwise permitted under the Plan or any order of the Bankruptcy Court, shall be in each case deemed final, non-defeasible and irrevocable and shall be retained in full by the Lender Group and their respective professionals. Except as expressly amended by the Plan to effectuate the terms and provisions of the Plan, the terms and provisions of the Financing Order shall be affirmed and shall remain in full force and effect.

### 2.    Releases

#### a.    The Debtors' Release

On the Effective Date, the Debtors, and their respective Estates shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all litigation or potential litigation which it has or may have against the Lender Group and all Released Affiliate Parties; provided, however, that the foregoing shall not operate as a waiver of or release from any litigation or potential litigation against the Lender Group or any Released Affiliate Party

45

arising out of the willful misconduct or gross negligence of any such Released Affiliate Party in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan.

### b. Other Releases.

Each Entity voting to accept the Plan, for itself and its respective successors, assigns, transferees, current and former officers, directors, agents, shareholders, members, financial advisors, attorneys, employees, partners, affiliates, representatives, in each case in their capacity as such, shall, by virtue of its vote shall be deemed to have released and discharged any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity, against (A) the Debtors and the Released Affiliate Parties, (B) the Lender Group, and (C) the members of the Committee in their capacity as such, and their respective affiliates officers, directors, managers, shareholders, employees, agents, consultants, counsel, advisors, accountants, attorneys and representatives and their respective property based in whole or in part upon any act or omission arising from or in connection with or in any way relating to the Debtors. Nothing in the previous sentence shall be deemed to release the Debtors from liability for (i) Claims filed before the Administrative Claims Bar Date or the Bar Date, to the extend Allowed and (ii) Claims scheduled by the Debtors that are not contingent, disputed or unliquidated; provided, however, that, notwithstanding clause (i) above, the Debtors, the Liquidating Debtors or the GUC Trustee may object to the allowance of any Claim, other than the Lender Group Claims, on any ground.

The Debtors, their Estates, the Liquidating Debtors, the GUC Trust, the GUC Trustee and the former and current members of the Committee in their capacity as such, for themselves and each of their respective successors, assigns, transferees, current and former officers, directors, agents, shareholders, members, financial advisors, attorneys, employees, partners, affiliates, and representatives, in each case in their capacity as such, shall be deemed to have released and discharged any and all claims, causes of action, demands, losses, whether known or unknown, in law or equity against the Lender Group and their respective property based in whole or in part upon any act or omission arising from or in connection with or in any way relating to the Debtors including without limitation any action or proceeding arising from or otherwise relating to any or all of the transactions contemplated by the Pre-Petition Credit Documents or the DIP Credit Documents.

Section 7(A) of the Plan applies shall be deemed to have granted the releases set forth herein notwithstanding that a party may hereafter discover facts in addition to, or different from, those which it now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and all parties expressly waive any and all rights that they may have under any statute or common law principle, including section 1542 of the California Civil Code, which would limit the effect of such releases to those Claims or causes of action actually known or suspected to exist at the time of Confirmation. Section 1542 of the California Civil Code generally provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

## B.    Funding of Plan

The source of funds to achieve Consummation and to carry out the Plan shall be the Debtors' Cash on hand, the Agent Contribution and Causes of Action, which shall be distributed in accordance with the Plan. For the avoidance of doubt, no member of the Lender Group shall be required to contribute any amount in excess of the Agent Contribution.

## XI.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

## A.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except for executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, or are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejections pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases.

## B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the earlier of (i) the Effective Date, or (ii) the date of the entry of an order of the Bankruptcy Court approving such rejection. Any Claims arising from the rejection of an executory contract or unexpired lease not Filed within such times will be forever barred from assertion against the Debtors, the Estates and their property, the Liquidating Debtors and the GUC Trust, unless otherwise ordered by the Bankruptcy Court or provided in the Plan. All such Claims for which Proofs of Claim are timely and properly Filed and ultimately Allowed will be treated as General Unsecured Claims subject to the provisions of Article III of the Plan.

## C.    Corporate Action

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed to be authorized and approved without further action by the Debtors, the Debtors' shareholders, and/or the Debtors' board of directors.

# XII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Unless otherwise ordered by the Bankruptcy Court or as set forth in the Plan: (i) the Liquidating Debtors and their professionals shall have the exclusive right to make and File objections to any Administrative Claims, Priority Claims and Claims in Classes 1 through 3 and (ii) the GUC Trustee and its professionals shall have the exclusive right to make and File objections to any Claims in Class 4.

The Liquidating Debtors and the GUC Trustee shall each have until 180 days following the Effective Date to File objections to any Filed or scheduled Proof of Claim; provided, however, that any of the Liquidating Debtors, the GUC Trustee or the Agent may apply to the Bankruptcy Court for an extension of such deadline for cause.

Except and to the extent as set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the commencement of these Chapter 11 Cases or the Effective Date, against the Holder of, or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Liquidating Debtors and the GUC Trustee shall be vested with and entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Effective Date or prior to the commencement of these Chapter 11 Cases as if these Chapter 11 Cases had not been commenced.

# XIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to Confirmation

It is a condition to Confirmation that (a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory in form and substance to each of the Debtors, the Committee and the Agent.

### B.    Conditions Precedent to Consummation

It is a condition of Consummation that (a) the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for these Chapter 11 Cases by the Clerk of the Bankruptcy Court in form and substance acceptable to the Debtors, Agent and the Committee; and (b) the Confirmation Order shall be a Final Order.

The Debtors, with the consent, not to be unreasonably withheld or delayed, of the Committee and the Agent may waive any of the conditions of the Confirmation and/or Consummation of the Plan, in whole or in part, set forth in this Article X at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than

48

proceeding to obtain Confirmation and/or achieve Consummation of the Plan; provided, however, that neither the Debtors nor the Committee may waive any conditions of the Plan or the Confirmation Order which would adversely affect the Lender Group's rights and interests under the Plan and the Financing Order (as determined by the Agent on behalf of the Lender Group in its sole discretion), and further provided that neither the Debtors nor the Lender Group may waive any conditions of the Plan or Confirmation Order which would adversely affect the rights and interests of Holders of General Unsecured Claims under the Plan in and to the GUC Fund or the GUC Fund Expense Reserve.

## C.    Effect of Non-Occurrence of Conditions to Consummation

If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors, the Committee, Agent or Lender Group; (b) prejudice in any manner the rights of the Debtors, the Committee, Agent or the Lender Group; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Committee, Agent or the Lender Group in any respect.

## D.    Notice of Effective Date

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Debtors shall File with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Agent and Committee, which notice shall constitute appropriate and adequate notice that the Plan has become effective, provided, however, that the Liquidating Debtors shall have no obligation to notify any Entity other than counsel to the Committee and Agent of such fact. The Plan shall be deemed effective as of 12:01 a.m., prevailing Eastern Time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid to those Entities who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## XIV.
## RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order or Consummation having occurred, these Chapter 11 Cases having been closed, or Final Decrees having been entered, the Bankruptcy Court shall have jurisdiction of matters arising out of, and related to these Chapter 11 Cases and the Plan under, and for the purposes of, sections 105(a), 1127, 1142 and 1144 of the Bankruptcy Code and for, among other things, the following purposes:

A.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or status of any Claim, including the resolution of any request for payment of any Administrative Claim or Priority Tax Claim and the resolution of any and all objections to the allowance or priority of Claims;

B.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

C.      resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any or all of the Debtors are parties or with respect to which any or all of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

D.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including ruling on any motion or objection Filed pursuant to the Plan;

E.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any or all of the Debtors or their affiliates, directors, employees, agents or Professionals that may be pending on the Effective Date;

F.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or this Disclosure Statement;

G.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan, or any Entity's obligations incurred in connection with the Plan, including, among other things, any avoidance actions or subordination actions under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code;

H.      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

I.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

J.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

K.      determine any other matters that may arise in connection with or relate to the Plan, this Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or this Disclosure Statement;

L.      enter a Final Decree concluding these Chapter 11 Cases;

M.      consider any modification of the Plan proposed under section 1127 of the Bankruptcy Code;

N. protect the property of the Estates from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property based upon the terms and provisions of the Plan, or to determine a Debtor's exclusive ownership of claims and Causes of Action retained or otherwise dealt with under the Plan;

O. hear and determine matters pertaining to abandonment of property of the Estates;

P. consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

Q. interpret, enforce and address any and all issues relating to any orders previously entered in these Chapter 11 Cases to the extent such orders are not superseded or inconsistent with the Plan;

R. recover all Assets of the Debtors and property of the Estates, wherever located;

S. hear and determine matters concerning state, local, and federal taxes in accordance with sections 345, 505, and 1146 of the Bankruptcy Code.

T. hear and act on any other matter not inconsistent with the Bankruptcy Code; and

U. interpret and enforce the injunctions contained in the Confirmation Order and Plan.

V.

## XV.
## MISCELLANEOUS PROVISIONS

### A.   Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C § 1930 as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date. The Liquidating Trustee shall pay fees that accrue under 28 U.S.C § 1930 solely with respect to its actual disbursements made by the Liquidating Trustee and the Liquidating Debtors shall pay fees that accrue under 28 U.S.C § 1930 solely with respect to its actual disbursements made by the Liquidating Debtors until a Final Decree is entered in the respective Chapter 11 cases, or the Bankruptcy Court otherwise orders. The Liquidating Trustee shall submit U.S. Trustee quarterly fee status reports with each quarterly fee paid after Confirmation.

### B.   Modification of Plan

The Debtors reserve to themselves, in accordance with the Bankruptcy Code, the right to amend or modify the Plan prior to the entry of the Confirmation Order. However, in certain instances, the Bankruptcy Court may require a new disclosure statement and/or revoking the Plan.

After the entry of the Confirmation Order, and subject to the prior written consent of the Agent and the Committee (such consent not to be unreasonably delayed or withheld), the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan, if (a) the Plan has not been Consummated and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

## C.  Revocation of Plan

The Debtors reserve the right, to the extent provided under the Bankruptcy Code, to withdraw the Plan at any time before Consummation of the Plan.

## D.  Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Entity.

## E.  Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. The filing of the Plan, the statements or provisions contained therein, or the taking of any action by the Debtors, Committee, Agent or Lender Group with respect to the Plan shall not be, or shall not be deemed to be, an admission or waiver of any rights of the Debtors, Committee, Agent or Lender Group with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

## F.  Post-Confirmation Effectiveness of Proofs of Claims

Proofs of Claim shall, upon the Effective Date, represent only the right to participate in the Distributions contemplated by the Plan (to the extent the Claims set forth in such Proofs of Claims are Allowed) and otherwise shall have no further force or effect.

## G.  Term of Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in these Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

## H.  Further Assurances

The Debtors, the Liquidating Debtors, the GUC Trustee and all Holders of Claims receiving Distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**I.     Entire Agreement**

The Plan supersedes all prior discussions, understandings, agreements, and documents pertaining or relating to any subject matter of the Plan, except for the Financing Order.

**J.     Retiree Benefits**

On and after the Effective Date, the Debtors will have no employees and will not pay retiree benefits.

**K.     Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of these Chapter 11 Cases, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

**L.     Filing of Additional Documents**

On or before the Effective Date, the Debtors may File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**M.     Enforceability**

Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

**N.     Severability**

The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtors (with the prior written consent of the Agent and the Committee, such consent not to be unreasonably delayed or withheld), and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**O.     Notice of Default under the Plan**

Unless otherwise agreed, no default shall be declared under the Plan unless any payment or performance due under the Plan (other than a payment required on the Effective Date) shall not have been made or deemed made thirty (30) calendar days after written notice of the default is received by the Debtors, Liquidating Debtors, Agent, the GUC Trustee, and the Committee. Any notice of default as provided for in the Plan or in any exhibit to the Disclosure Statement shall (a) conspicuously state that it is a notice of default; (b) describe with particularity the nature of the default, including a reference to the specific provisions of the Plan as to which a default or defaults have allegedly occurred; and (c) describe any action required to cure the default, including the exact amount of any payment required to cure such default, if applicable.

## P. Investments

The Liquidating Debtors and the GUC Trustee shall be permitted from time to time to invest all or a portion of the Cash contained in any of the Reserve Funds in securities issued or directly guaranteed by the United States government or any agency thereof, commercial paper of corporations rated at least "A-1" by Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc., interest bearing certificates of deposit, time deposits, bankers' acceptances and overnight bank deposits, and repurchase agreements.

## Q. Reliance

The Liquidating Debtors and the GUC Trustee, and their respective agents, employees and professionals, while acting in their capacity as such, including but not limited to, objecting to Claims, making Distributions to Creditors holding allowed Claims and approving settlement of actions, as the case may be, shall be permitted to reasonably rely on any certificates, sworn statements, instruments, reports, claim dockets, schedules, or other documents reasonably believed to be genuine and to have been prepared or presented by the Bankruptcy Court Clerk's Office, the Debtors, and the Debtors' professionals.


# XVI.
# RISK FACTORS

If objections to certain Administrative and Priority Claims are not resolved as expected by the Debtors, the Agent Contribution may be insufficient to satisfy Allowed Administrative and Priority Claims and the Plan may not be able to go effective.


# XVII.
# BEST INTERESTS OF CREDITORS TEST

Confirmation of the Plan requires, among other things, that each holder of a claim in an impaired class and each holder of an interest either: (a) accepts the Plan; or (b) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. This requirement is commonly referred to as the "Best Interests Test."

## A. Chapter 7

To determine the value that the holders of impaired claims and interests would receive if the Debtors were liquidated, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case. Bankruptcy Code section 704 requires a chapter 7 trustee to collect and reduce to money the property of the estate as expeditiously as is compatible with the best interests of parties in interest.

The Cash available for satisfaction of Allowed Claims would consist of the proceeds resulting from the disposition of the Debtors' few remaining assets, augmented by the Cash, if any, held by the Debtors at the time of the commencement of the chapter 7 cases. Any such Cash amount would then be reduced by the amount of any Allowed Claims secured by such assets, the costs and expenses of the liquidation and such additional Administrative Claims and other priority claims that may result from the use of chapter 7 for the purposes of liquidation.

The costs of liquidation under chapter 7 would include fees payable to a trustee in bankruptcy, as well as those that might be payable to his or her attorneys and to other professionals that such trustee may engage, plus any unpaid expenses incurred by the Debtors during the Chapter 11 Cases that would be allowed in the chapter 7 cases, such as compensation for attorneys, appraisers, accountants or other professionals and costs and expenses of the Debtors and the Committee. Such Administrative Claims would have to be paid in Cash, in full from the liquidation proceeds before the balance of those proceeds could be made available to pay other Claims.

## B.  **Liquidation Analysis**

Pursuant to Bankruptcy Code section 1129(a)(7), unless there is unanimous acceptance of the Plan by an impaired Class, the Debtors must demonstrate, and the Bankruptcy Court must determine that with respect to such Class, each holder of a Claim will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date of the Plan. This requirement is commonly referred to as the "Best Interests of Creditors Test." For the reasons set forth in the following paragraph, the Debtors believe that the Plan satisfies the Best Interests of Creditors Test.

The Debtors believe the Plan provides greater recovery to the Holders of Allowed General Unsecured Claims than such Holders would receive under a liquidation under chapter 7 because it provides such creditors with the benefit of the Creditor Settlement. Pursuant to the Creditor Settlement, the Lender Group has, among other things, reduced over $100 million of alleged secured claims, agreed to permit its collateral proceeds to be used to pay administrative and priority tax claims, agreed to make the Agent Contribution, and agreed not to share in Preserved Avoidance Actions. All of these aspects of the Creditor Settlement inure to the benefit of the Holders of Allowed General Unsecured Claims under the Plan. Under a chapter 7 liquidation, these benefits would be lost. As such, the Debtors believe that the Holders of General Allowed Unsecured Claims could likely receive nothing under a chapter 7 liquidation, because the Lender Group's secured claims would exhaust all of the proceeds that are made available to creditors by virtue of the Creditor Settlement in the Plan. In addition, the Debtors believe that any challenge by a chapter 7 trustee to the perfected status of the Lender Group's liens or potential Claims against any of the Released Affiliate Parties would be extremely expensive, would consume the limited funds that are available in the Debtors' cases, and be highly uncertain in outcome – again, the Debtors are aware of no meritorious claims against the Released Affiliate Parties.

In chapter 7 cases, the chapter 7 trustee would be entitled to seek a sliding scale commission based upon the funds distributed by such trustee, even though the Debtors have

already accumulated much of the funds and have already incurred many of the expenses associated with generating those funds. In light of historical experience from other cases, the Debtors believe that the costs of such fees for a chapter 7 trustee and the professional fees for the professionals retained by the chapter 7 trustee would be about 5% of available funds. Accordingly, the Debtors believe that there is a reasonable likelihood that Creditors would "pay again" for the funds accumulated by the Debtors, since the chapter 7 trustee would be entitled to receive a commission in some amount for all funds distributed, including the substantial funds handed over to the Liquidating Debtors and the GUC Trustee by the Debtors. It is also anticipated that chapter 7 liquidations would result in delay in the Distributions to Creditors. Among other things, chapter 7 cases would trigger a new bar date for filing Claims that would be more than 90 days following conversion of the case to chapter 7. Fed. R. Bankr. P. 3002(c). Hence, chapter 7 liquidations would not only delay Distributions, but raise the prospect of additional Claims that were not asserted in the Chapter 11 Cases. Based on the foregoing, the Plan provides an opportunity to bring the greatest return to Creditors.

The Debtors believe that, if the Plan is not confirmed or is not confirmable, the only likely alternative will be conversion of the Chapter 11 Cases to chapter 7 liquidations. For the reasons set forth above, the Debtors believe that the Plan is more likely to yield economic benefits to unsecured creditors than chapter 7 liquidations because it will avoid a layer of administrative expense associated with the appointment of a chapter 7 trustee, while decreasing the efficiency of administrating the Debtors' assets for the benefit of their Creditors.

# XVIII.
## CERTAIN FEDERAL INCOME TAX
## CONSEQUENCES OF THE PLAN

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter that is contained in this document.

## A.     Certain Federal Income Tax Consequences of the Plan

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to Holders of Claims. This discussion is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to the any of the issues discussed below. Further, legislative, judicial, or administrative changes may occur, perhaps with retroactive effect, that could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Holders of Claims.

This discussion is for general information only and does not purport to address all aspects of U.S. federal income taxation that may be relevant the Holders of Claims in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, regulated investment companies). This discussion only addresses the tax consequences to Holders of Claims who have held such Claims as capital assets within the meaning of the Internal Revenue Code. No aspect of foreign, state, local or estate and gift taxation is addressed.

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

TO COMPLY WITH THE IRS CIRCULAR 230, IT IS NOTIFIED THAT (1) THE FOLLOWING SUMMARY IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE PLAN, (2) IT CANNOT BE USED BY ANY PERSON FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE ASSERTED AGAINST THE PERSON UNDER THE INTERNAL REVENUE CODE, AND (3) HOLDERS OF CLAIMS OR INTERESTS SHOULD SEEK THEIR OWN ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

## B.    In General.

The United States federal income tax consequences of the distributions contemplated by the Plan to the Holders of Claims will depend upon a number of factors. The character and amount of income, gain, or loss recognized as a consequence of the Plan and the distributions provided for thereby will depend upon, among other things, (1) the manner in which a Holder acquired a Claim, (2) the length of time the Claim has been held, (3) whether the Claim was acquired at a discount, (4) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years, (5) whether the Holder has previously included in income accrued but unpaid interest with respect to the Claim, (6) the method of tax accounting of the Holder, and (7) whether the Claim is an installment obligation for United States federal income tax purposes.

For purposes of the following discussion, a "U.S. Holder" is any person (1) who is a citizen or resident of the United States; (2) that is a corporation or partnership created or organized in or under the laws of the United States or any state thereof or District of Columbia; (3) that is an estate, the income of which is subject to United States federal income taxation regardless of its source or; (4) that is a trust (a) the administration over which a United States person can exercise primary supervision and all of the substantial decisions of which one or more United States persons have the authority to control or (b) that has elected to continue to be treated as a United States Person for United States federal income tax purposes. A "Non-U.S. Holder" is any person that is not a U.S. Holder. In the case of a partnership, the tax treatment of

its partners will depend on the status of the partner and the activities of the partnership. Holders who are partnerships or partners in a partnership should consult their tax advisors.

Certain Holders of Claims (such as foreign persons, S corporations, regulated investment companies, insurance companies, financial institutions, small business investment companies, broker-dealers, and tax-exempt organizations) may be subject to special rules not addressed in this summary of United States federal income tax consequences. There also may be state, local, and/or foreign income or other tax considerations or United States federal estate and gift tax considerations applicable to Holders of Claims, which are not addressed herein. EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN IS STRONGLY URGED TO CONSULT ITS TAX ADVISOR WITH RESPECT TO DISTRIBUTIONS RECEIVED UNDER THE PLAN.

## C.    U.S. Holders of Claims.

A U.S. Holder should generally recognize capital gain or loss for United States income tax purposes in an amount equal to the difference between the amount of cash (and other consideration received) under the Plan in respect to such Holder's Claim and the Holder's adjusted tax basis in the Claim. However, to the extent a U.S. Holder received any cash (or other consideration) in satisfaction of any accrued and unpaid interest, such Holder may recognize ordinary income or loss to the extent that such cash (or other consideration) is allocable to the accrued and unpaid interest, unless such Holder has previously included the accrued interest in such Holder's taxable income.

## D.    Non-U.S. Holder of Claims.

A Non-U.S. Holder of a Claim generally will not be subject to United States federal income tax with respect to any income or gain recognized upon the exchange of such Holder's Claim with cash (or other property) pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain from the exchange is "effective connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met. To the extent any cash (or other consideration) is distributed for accrued and unpaid interest, however, a Non-U.S. Holder may be subject to United States withholding taxes (at 30%) unless such Holder is qualified for the so-called "portfolio interest exemption" or eligible to claim a reduction or exemption under any applicable treaty and complies with certain required certification procedure.

## E.    Importance of Obtaining Professional Tax Assistance.

The United States federal income tax consequences to a Holder other than a Holder receiving cash (or other property) in satisfaction of such Holder's Claim may be different from the tax consequences described above. Holders of each such Claim should consult their tax advisers regarding the potential federal income tax consequences.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE

DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, CLAIM HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## XIX.   CONCLUSION

The Debtors believe that the Plan is in the best interest of Creditors and urges Creditors to vote to accept the Plan.

Dated:  September 11, 2009        Respectfully submitted,

GLOBAL MOTORSPORT GROUP, INC.

By: _____
Its:    Chief Restructuring Officer

CUSTOM CHROME MANUFACTURING, INC.

By: _____
Its:    Chief Restructuring Officer

CUSTOM CHROME FAR EAST, LTD.

By: _____
Its:    Chief Restructuring Officer

CUSTOM CHROME EUROPE, LTD.

By: _____
Its:    Chief Restructuring Officer

Submitted by:

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
Brad R. Godshall (CA Bar No. 105438)
David M. Bertenthal (CA Bar No. 167624)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Counsel for Debtors and Debtors in Possession